UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANNA LAUGHLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:14-CV-1960-RLM-CAN |
| | ) |
| BIOMET, INC. ET AL., | ) |
| | ) |
| Defendants. | ) |

OPINION and ORDER

    Anna Laughlin brought suit in Florida state court against two groups of defendants: Biomet Orthopedics LLC, Biomet Inc., Biomet US Reconstruction LLC, and Biomet Manufacturing Inc. (collectively, Biomet), and Brett Shoop and Mid Atlantic Medical LLC (collectively, Distributors). Ms. Laughlin's complaint alleges strict product liability, negligence, failure to warn, breach of implied warranty, breach of express warranty, misrepresentation, and violations of the Maryland Consumer Protection Act, all in relation to the alleged failure of her Biomet M2a-Magnum hip implant. The defendants removed the case to the District of Maryland based on diversity of citizenship under 28 U.S.C. § 1446, and the Judicial Panel on Multidistrict Litigation transferred the case into the Biomet multi-district litigation docket.

    This matter is before me on Ms. Laughlin's motion to remand and amended motion to remand. For diversity purposes, Ms. Laughlin and the Distributors are citizens of Maryland; the four Biomet defendants are citizens of Indiana. Biomet

designed and manufactured Ms. Laughlin's hip implant, while the Distributors acted as independent contractors for Biomet by marketing, selling, and distributing the implant. Biomet removed this case to federal court on the argument that the citizenship of the Distributors should be disregarded for diversity purposes, because Ms. Laughlin can't prevail on any claim against them and they were fraudulently joined solely to defeat diversity. Ms. Laughlin argues that the removal was improper, because the Distributors were properly joined and so complete diversity is lacking.

For a federal court to have jurisdiction over a suit based on diversity, there must be complete diversity of citizenship – no defendant may share the citizenship of any plaintiff. 28 U.S.C. § 1332(a). A plaintiff can't fraudulently join a non-diverse defendant solely for the purpose of destroying diversity jurisdiction. Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 763 (7th Cir. 2009). "Fraudulent" in this context doesn't mean bad faith on the plaintiff's part; it means that the claims against the non-diverse defendant have no realistic chance of success. Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992). To decide whether joinder was fraudulent, a court must ask whether, "after resolving all issues of fact and law in favor of the plaintiff . . . there is any reasonable possibility that the plaintiff could prevail against the non-diverse defendant." Schur v. L.A. Weight Loss Ctrs., 577 F.3d 752, 764 (7th Cir. 2009) (internal quotation marks omitted). The party seeking removal – or, as here, resisting remand – bears the heavy burden of showing that joinder was

fraudulent. Id. at 763. If the removing defendant meets that heavy burden, the district court "may 'disregard' the nondiverse defendant" for jurisdictional purposes, such that the fraudulent joinder doctrine acts as "an 'exception' to the requirement of complete diversity." Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013) (quoting Walton v. Bayer Corp., 643 F.3d 994, 999 (7th Cir. 2011)).

In deciding whether a defendant has been fraudulently joined, a court isn't limited to the pleadings and may consider summary judgment-type evidence such as affidavits. Millman v. Biomet Orthopedics, Inc., No. 3:13-CV-77 RLM-CAN, 2013 WL 6498394, at *2 (N.D. Ind. Dec. 10, 2013); Siegel v. H Group Holding, Inc., No. 07 C 6830, 2008 WL 4547334, at * 3 (N.D. Ill. Apr. 9, 2008) ("[A] limited use of affidavits and other evidence is permissible so long as the evidence is not used to 'pre-try' the case.").

The fraudulent joinder analysis requires a district court to apply state law to determine whether the plaintiff would have any reasonable possibility of success against the non-diverse defendant in state court. Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 764 (7th Cir. 2009). The parties agree that Maryland law governs, and that in Maryland sellers or distributors of a product ordinarily can be held strictly liable for product defects. *See* Owens-Illinois, Inc. v. Zenobia, 325 Md. 420, 441, 601 A.2d 633, 643 (1992) (holding that in cases involving products that are defective when sold, "middlemen or intermediate sellers of the defective product are strictly liable to the plaintiff user just as the manufacturer is liable to the plaintiff.").

Biomet argues that joinder of the Distributors was fraudulent because while middlemen are ordinarily liable in Maryland product liability cases, all of Ms. Laughlin's claims against the Distributors are defeated by an exception to that general rule: Maryland's so-called "sealed container doctrine." This doctrine, codified in the Maryland Courts and Judicial Proceedings Code, states that it "shall be a defense to an action against a seller of a product for property damage or personal injury allegedly caused by the defective design or manufacture of a product" if the seller can establish that:

> (1) The product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form;
> (2) The seller had no knowledge of the defect;
> (3) The seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care;
> (4) The seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and
> (5) The seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury.

(Md. Code Ann., Cts. & Jud. Proc. § 5-405(b)).

Ms. Laughlin suggests that even if the sealed container doctrine defeats some of her claims, it doesn't defeat her failure to warn claims because the doctrine as codified applies only to actions for injuries caused by "the defective design or manufacture of a product." Id. A failure to warn claim, she insists, doesn't require that a product be defectively designed or manufactured, so a sealed container defense isn't available for such claims. The Maryland courts have rejected Ms. Laughlin's interpretation, reasoning that deficient warnings

-4-

make a product defective within the meaning of § 5-405(b). *See* Reed v. Sears, Roebuck & Co., 934 F. Supp. 713, 718 (D. Md. 1996) ("[P]laintiffs' argument that the sealed container defense is limited to design and manufacturing defects, but is not applicable to claims alleging 'failure to warn' or 'inadequate warning,' conveniently overlooks the fact that 'failure to warn' liability is merely a type of design defect."). If the defendants can show that the elements of Maryland's sealed container doctrine are present, the doctrine applies to Ms. Laughlin's failure to warn claims.

Biomet submitted a declaration from Brett Shoop addressing all five elements necessary for the sealed container doctrine to apply. Mr. Shoop testified that Biomet packs and seals the Magnum implants in packages before delivering them to the Distributors, who don't unseal the packages until they are in the operating room ready to be implanted. The Distributors played no role in designing, manufacturing, packaging, or labelling the implants, and didn't know or have reason to know of any defects in the product or insufficiencies in the warning labels. And while the sealed implant packages are in the Distributors' possession, the Distributors don't alter the packaging, labels, or implant in any way. Ms. Laughlin hasn't come forward with any evidence to contradict any of the factual assertions in Mr. Shoop's affidavit. Instead of contesting the affidavit with evidence of her own, Ms. Laughlin presents several arguments as to why the sealed container doctrine shouldn't apply.

First, Ms. Laughlin points out that while a court may consider affidavits and other evidence in ruling on a motion to remand, the permissible evidence is limited to "uncontroverted . . . evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to a plaintiff under applicable state law." Rutherford v. Merck & Co., Inc., 428 F. Supp. 2d 842, 848 (S.D. Ill. 2006). She insists that Mr. Shoop's affidavit isn't truly uncontroverted as to the second element of the sealed container doctrine – the seller's knowledge of the defect – because her complaint "alleged that the DISTRIBUTOR DEFENDANTS did have knowledge" of the dangers posed by the Magnum implants.

Ms. Laughlin is incorrect. The first paragraph of her complaint defines two groups: "BIOMET" or "Defendants" refers to the four Biomet entities, while "DISTRIBUTORS" refers to Mr. Shoop and Mid Atlantic. While the complaint includes detailed allegations about what the "Defendants" knew about the Magnum implant's problems, it has no allegations about the knowledge of the "DISTRIBUTORS." Ms. Laughlin recognizes this but characterizes it as "obviously a scrivener's error," insisting that she meant for the allegations about Biomet's knowledge to apply to the Distributors too and that it was a "harmless mistake." That this was somehow a clerical error appears unlikely. Immediately after the section of the complaint detailing what "Defendants" knew about implant failures is a section subtitled "DISTRIBUTORS," which makes separate allegations about the conduct of the Distributors; clearly, Ms. Laughlin knew how to differentiate

between the two subgroups of defendants she herself defined and how to make different allegations pertaining to each.

Regardless of what Ms. Laughlin might have meant the complaint to say, I can only give legal effect to what it actually says. The purpose of the pleading standards in the Federal Rules of Civil Procedures is to ensure that a defendant has fair notice of the allegations against him or her, and the complete absence of allegations about the Distributors' knowledge of defects wouldn't have alerted the Distributors that they were accused of knowing about the dangers posed by the Magnum implants. Ms. Laughlin argues that the Distributors' failure to move to dismiss the complaint based on this "error" proves that it was harmless, but she cites no authority suggesting that a court can read allegations into a complaint simply because the defendant didn't formally object to their absence. She also suggests that it would be unfair to allow Biomet to capitalize on her error without giving her a chance to correct the error by amending her complaint, but she has had such an opportunity; this case was filed more than a year and half ago, and nothing prevented Ms. Laughlin from asking for leave to amend her complaint in that time.

In short, Mr. Shoop's affidavit isn't contradicted by the allegations in Ms. Laughlin's complaint or by anything else in the record. Even the self-serving testimony of the non-diverse defendant alone can establish fraudulent joinder, if it's uncontradicted by any other evidence in the record. *See* <u>Faucet v. Ingersoll-Rand Min. & Machinery Co.</u>, 960 F.2d 653, 654-655 (7th Cir. 1992) (holding that

fraudulent joinder was established, when the uncontroverted affidavit of the non-diverse defendant stated that he "had absolutely nothing to do with" the machine alleged to have caused the plaintiff's injury). Mr. Shoop's unrebutted testimony shows that Maryland's sealed container doctrine applies. Because the doctrine provides a complete defense to Ms. Laughlin's claims against the Distributors, the defendants have met their heavy burden of showing that there is no reasonable probability Ms. Laughlin could prevail against the Distributors in state court.

None of the cases Ms. Laughlin relies on compel a different conclusion. She cites a long list of cases involving medical devices in which federal courts granted remand motions based on the existence of a non-diverse distributor defendant. Whether remand is proper turns on whether Maryland's particular sealed container doctrine applies – and only one of the cases Ms. Laughlin cites applies Maryland law. Whether suits similar to this one can proceed against distributors under the laws of *other* states is simply irrelevant.[1] In the one case that applied Maryland law, Harris v. Biomet, Civil Action No. GLR-12-575 (June 25, 2012), the District of Maryland granted a motion to remand in a case very similar to this one: the plaintiff was suing Biomet and these same distributors

---

[1] Ms. Laughlin points in particular to a recent case in which Biomet argued in favor of remand. Martin v. DePuy Orthopaedics, Inc., No. 12CV2292-LAB JMA, 2013 WL 607855 (S.D. Cal. Feb. 15, 2013). Contrary to Ms. Laughlin's suggestion, there's nothing unfair or inconsistent about Biomet arguing that remand of a case is appropriate under California law and that remand of an allegedly similar case is improper under Maryland law.

about a hip implant, Biomet removed for fraudulent joinder based on Mr. Shoop's affidavit, and the plaintiff moved to remand. The district judge held that Mr. Shoop's declaration wasn't enough to meet Biomet's heavy burden of showing fraudulent joinder, and granted the motion to remand.

The opinion in Harris doesn't bind this court and its reasoning isn't persuasive as applied to this case. The Harris court didn't mention Maryland's sealed container doctrine at all. And even if the opinion is read as implicitly considering and rejecting a sealed container defense, whether such a defense applies depends on the specific allegations in the complaint and other evidence in the record. The Harris court emphasized that it was granting the motion to remand "in light of the allegations contained within the Complaint and supporting documentation within the Motion to Remand," but didn't make clear what those allegations and supporting documents might have. Without knowing how comparable the complaint and factual record in this case are to those in Harris, the court can't determine whether Harris is analogous. The plaintiff in Harris might, for example, have alleged that the distributors knew of the problems with Biomet's hip implants and produced evidence to that effect.

Finally, Ms. Laughlin argues that even if the sealed container doctrine would ordinarily shield the Distributors, it doesn't apply because this case fits into one[2] of six codified exceptions to the doctrine. The Maryland Code states

---

[2] Ms. Laughlin also mentions a separate exception, which renders the sealed container doctrine inapplicable where the claimant would be unable to enforce a judgment against

-9-

that the sealed container defense isn't available if "[t]he manufacturer is otherwise immune from suit." Md. Code Ann., Cts. & Jud. Proc. § 5-405. Ms. Laughlin believes that this exception applies because Biomet has asserted 36 affirmative defenses, 27 of which would bar any recovery. Ms. Laughlin conflates immunity from suit with a defense on the merits. None of Biomet's laundry list of affirmative defenses asserts that Biomet is categorically immune from suit. They are defenses such as contributory negligence, assumption of the risk, the learned intermediary doctrine, and laches – none of which bars suit against a defendant completely. Put differently, Biomet's affirmative defenses don't assert that the company can't be sued; they assert only that if sued, it will win. If plaintiffs could escape the effects of the sealed container doctrine whenever the manufacturer of a product has potentially valid defenses to liability, the doctrine would mean nothing – and would, perversely, afford more protection to the least meritorious cases.

---

the product's manufacturer. She doesn't develop this argument, and in any case there's no evidence from which the court could conclude that Biomet lacks sufficient resources to pay a judgment against it. This distinguishes this case from Richardson v. Philip Morris Inc., 950 F. Supp. 700 (D. Md. 1997), in which the district court held that cigarette distributors could be liable in a tobacco class action suit despite the sealed container doctrine, "[g]iven the scope of this potential class action, and the filing of similar suits in other states." Id. at 704-705. Litigation surrounding the Magnum hip implants is much more limited in scope than that surrounding tobacco products in the 1990s, and the concern expressed in Richardson – that cigarette manufacturers might run out of money before all plaintiffs' claims were resolved – isn't present here. In fact, Biomet has already funded settlement of the vast majority of Magnum hip implant cases and there has been no indication in this MDL that the funds available are nearly depleted.

-10-

The sealed container doctrine shields the Distributors from liability, and Ms. Laughlin has no reasonable possibility of prevailing against them in a Maryland court. Accordingly, the case was properly removed based on fraudulent joinder, and the court DENIES Ms. Laughlin's motion for remand (Doc. No. 10) and amended motion for remand (Doc. No. 74).

SO ORDERED.

ENTERED:  February 17, 2016

/s/ Robert L. Miller, Jr.
Judge
United States District Court